JOURNAL ENTRY AND OPINION.
{¶ 1} The appellant, Aubrey U. Birchard, appeals the final judgment of the trial court rendered, without opinion, in favor of the appellee, Marc Glassman, Inc., upon its motion for summary judgment. For the reasons set forth below, we affirm the decision of the trial court.
 {¶ 2} Aubrey Birchard ("Birchard"), was an employee of Marc's Discount Store ("Marc's") in Westlake, Ohio, hired March 8, 2001. She was originally hired as a stock person working the evening shift, but requested a transfer to the day shift once she learned she was pregnant, on approximately May 18, 2001. The only job available on the day shift was as a cashier, and Birchard accepted this position. Birchard was required to punch a time clock at the beginning and end of each day and to clock out for her half-hour lunch break.
 {¶ 3} Her duties as a cashier included ringing up items for customers, returning unpurchased items to shelves, stocking candy or gum at the front of the store, and caring for the plant section, also located at the front of the store. Birchard does not allege she was physically unable to complete any of these tasks due to her pregnancy. She does, however, claim that she required "walk-breaks," or periods of time during the day where she would need to leave her post at the cash register and walk about the store due to leg and foot pain caused by standing for long periods of time.
 {¶ 4} Birchard provided her supervisors with documentation from her doctor that stated she required breaks several times a day to walk around. She claims that, during her walking breaks, she took the opportunity to complete needed tasks about the store, such as restocking shelves. Her supervisors, however, noted that she had a propensity for "wandering," and they would often be unable to locate her during work hours. Birchard was also caught "stealing time;" for example, she would punch in from lunch well in advance of returning to her work station. Stealing time is grounds for termination from Marc's. Birchard was reprimanded for this behavior prior to her termination on December 10, 2001.
 {¶ 5} On December 26, 2001, Birchard filed a complaint alleging discrimination on the basis of her sex, her pregnancy and the fact that she had complained about a supervisor. Prior to the motion for summary judgment, Birchard voluntarily dismissed counts two and three of her complaint, and the portions of count one which did not pertain to her pregnancy. Her claim of pregnancy discrimination was the only claim the trial court considered on summary judgment.
 {¶ 6} Appellant presents the following assignment of error for our review:
 {¶ 7} "I. The lower court erred in dismissing appellants (sic) claim of pregnancy discrimination as there were triable issues of fact warranting a jury trial on that claim."
 {¶ 8} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 9} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356.
 {¶ 10} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 11} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741. In ruling on an assignment of error dealing with the granting or denial of a motion for summary judgment, this court must review the same evidentiary material provided to the trial court for review. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 360.
 {¶ 12} R.C. 4112.01(A) prohibits an employer from engaging in discrimination on the basis of sex, which includes discrimination based on pregnancy. Case law interpreting and applying Title VII of the Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000 et seq. ("Title VII"), is generally applicable to cases involving R.C. Chapter 4112. Genaro v. Cent. Transport, Inc. (1999), 84 Ohio St.3d 293. The requirements of R.C. 4112.02 and R.C. 4112.01(B) coincide with the federal Pregnancy Discrimination Act ("PDA"), codified at 42 U.S.C. § 2000(E)(K). R.C. 4117.01(B) states in pertinent part:
 {¶ 13} "For the purposes of divisions (A) to (F) of section 4112.02
of the Revised Code, the terms `because of sex' and `on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in division (B) of section 4111.17 of the Revised Code shall be interpreted to permit otherwise."
 {¶ 14} To establish a claim for discrimination on the basis of pregnancy, a litigant must establish: (1) that she was pregnant; (2) that she was qualified for her job; (3) that she was subject to an adverse employment decision, and (4) that there is a nexus between her pregnancy and the adverse employment decision. Prebilich-Holland v. GaylordEntertainment Company, (6th Cir. 2002) 297 F.3d 438. An adverse action need not be economic or tangible discrimination to fall within the prohibition. Nat'l R.R. Passenger Corp. v. Morgan, (2002) 122 S.Ct. 2061,2074.
 {¶ 15} Pregnant employees are required to be treated equally to all non-pregnant employees who are similarly situated in their ability or inability to do work. Personnel actions such as transfers, promotions or "changes in conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action." Peterson v. Buckeye SteelCasings, (1999) 133 Ohio App.3d 715 at 727, citing Kocsis v. Multi-CareMgt. (6th Cir. 1996) 97 F.3d 876, 886. Neither federal nor Ohio law requires an employer to make an accommodation for a pregnant employee unless it has made the accommodation to a similarly situated non-pregnant employee. Preist v. TFH-EB, Inc. (1998) 127 Ohio App.3d 159. Accommodations are required only if necessary to carry out the essential functions of the job. Ensley-Gaines v. Runyon, Postmaster, (6th Cir., 1996) 100 F.3d 1220.
 {¶ 16} This court addressed the requirements for a discrimination case in which Civ.R. 56 has been invoked in Berenda v. Buszek, Kiplinger Associates (January 17, 2002), Cuyahoga App. No. 79357. Once a plaintiff establishes a prima facie case of discrimination, a trial court must, as an overlay, apply the burden-shifting tripartite test mandated by McDonnell Douglas. Berenda, supra; Barker v. Scovill, Inc. (1983),6 Ohio St.3d 146, citing McDonnell Douglas Corp. v. Green, (1973)411 U.S. 792.
 {¶ 17} Once the prima facie case is established, a presumption of discrimination exists and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's termination. Plumbers Steamfitters Joint Apprenticeship Comm. v.Ohio Civil Rights Commission, et al. (1981) 66 Ohio St.2d 192. Only if the defendant carries its burden does the burden shift back to the plaintiff to show that the proffered reason is pretext. McDonnellDouglas, 411 U.S. 792. The defendant must rebut the presumption of discrimination by producing evidence that the plaintiff was terminated or rejected for a legitimate, nondiscriminatory reason. Cline v. CatholicDiocese of Toledo (1999) 206 F.3d 651. If the defendant fails to do so with evidence that does not raise a genuine issue of material fact, summary judgment cannot be granted. Berenda, supra, at 14.
 {¶ 18} In the instant case, the appellant cannot meet the burden of establishing a prima facie case of discrimination on the basis of pregnancy; thus, summary judgment was properly granted. The parties submitted to the trial court deposition testimony of the appellant, her immediate supervisor, Margaret "Peggy" Golden, Marc's operations manager, Paula Hall, assistant supervisor, Lisa Smith, as well as affidavits executed by Peggy Golden and Paula Hall.
 {¶ 19} Appellant alleges that she was disciplined and ultimately terminated because her immediate supervisor, Golden, "did not like" that she was pregnant. According to appellant's deposition testimony, she was routinely assigned to the "express lane," a job posting which did not give her many opportunities to take breaks or walk around the store, and she was often precluded from restocking shelves and other such activities because she was required to remain at her cash register. However, appellant testified that any cashier stationed at the express lane was often unable to engage in any restocking activities because the express lane stays open as long as the store is open, unlike some of the other cash registers which may be shut down during non-peak business hours.
 {¶ 20} Appellant admits that no employee of Marc's, including Golden, made any derogatory statements regarding her pregnancy, and members of the management team encouraged her to report to them any problems she was having as far as her medical needs. Finally, appellant testified that members of the Marc's management team were routinely responsive to her need for frequent bathroom breaks and walking breaks.
 {¶ 21} In contrast, appellant's supervisors testified that they had repeated problems with appellant "wandering" the store and failing to return to her duty post in a timely fashion when sent on errands. Appellant was then assigned to the express lane so that she would be unable to stray too far from her duty post. Supervisor Golden testified that, on at least one occasion after she had been given permission to take a walking break, appellant left the store to sit on a bench and enjoy a cigarette. The last straw came, however, when it was discovered by supervisors Golden and Hall that appellant had punched in from lunch well before actually returning to her work station. Appellant had been reprimanded for this activity in November 2001, but was not terminated at that time because management opted to give her another chance to improve her performance. When, in early December 2001, it was discovered that appellant had once again punched in well in advance of returning to her work station, she was terminated.
 {¶ 22} Based on our review of the record, appellant has failed to establish a prima facie case of discrimination and has not set forth any specific facts showing that a genuine issue exists for trial. The parties have not disputed that appellant was pregnant, that she was qualified to perform her duties as a cashier and that there was an adverse employment decision (her termination). However, there does not exist a nexus between the appellant's termination and the fact that appellant was pregnant. To the contrary, Marc's management attempted to accommodate her medical needs and went out of their way to keep appellant employed by giving her a reprimand and warning regarding the time clock problem prior to her termination.
 {¶ 23} Based on the evidence presented, and construing the evidence in the light most favorable to the appellant, reasonable minds can only come to the conclusion that appellant was fired because she was unable to comply with Marc's time clock and work station procedures.
 {¶ 24} Because appellant cannot meet her burden of establishing a prima facie case of discrimination, it is not necessary for this court to apply the McDonnell Douglas burden-shifting test.
Judgment affirmed.
KENNETH A. ROCCO, A.J., and SEAN C. GALLAGHER, J., concur.